Judge Underwood
delivered the opinion of the Court.
In 1821, Warfield let Hugh Talbot have $183, in notes on the bank denominated the Hinkston Exporting Company, for which T*lbot executed his note to Warfield, payable in twelve months, for one hundred and eighty three dollars. Judgment was obtained upon this note, and Talbot replevied it for two years. Execution having issued on the reple-vin bond, Talbot filed his bill with injunction, in which he charges that the contract was, that he was to pay Warfield in notes on the Bank of the Commonwealth, and that through fraud or mistake, this stipulation had been omitted in writing the note. He also charges that Warfield had transferred the benefit of the replevin bond, to George Talbot; that said George was indebted to him; that he had advanced money, and merchandise to said George, in discharge of the replevin bond, while he owned it, and was entitled to control it; yet, notwithstanding these advances and, payments, to the full amount of the bond, said George had transferred the replevin bond to Williams, who was proceeding, with executions thereon, to collect, the money.
Warfield answered,-denying the existence of any fraud or mistake, in the execution of the note, and admitting a transfer of the replevin bond to George Talbot. Hugh Talbot thereafter, amended his bill, charging, that-at the time Warfield let him have the notes on the Hinkston Exporting Company, they were worth only half their nominal amount in specie, and that it was a usurious transaction on the part of War-field, to take his note for their nominal amount, payable in dollars, within twelve months. To this amend-atory bill, Warfield answered, that he sold the bank nfites on the Hinkston Exporting Company,.to Talbot,, and did not lend them, and that there was no usury in the transaction. George Talbot, in his answer, denies,. positively, that Hugh Talbot paid him any money or merchandise, or other article, in discharge *84 of the replevin bond, and insisted that the whole thereof, is due. He admits the transfer to Williams, who claims the whole amount of the bond, in specie. The court dissolved the injunction for part, and perpetuated for part. Beth parties being dissatisfied, have respectively brought the case to this court for revision.
Bonoiting & lending or device to avoid statute, must be established before there can be usury. Chancellor will not, from solitary fact that note, for dollars, or specie, payable in months, was executed for same ain’t of depredated bank paper, conclude that there was usury.
Depreciated bank paper is a commodity, and liable to be bought, and sold, as any other ar.ticle.
There is no evidence that the note was drawn fraudulently or through mistake, variant from the contract, as made. H. Talbot is not entitled, therefore, to relief on these allegations' of his bill. There is nc> proof that the notes on the Binkston Importing Company were lent by Warfield to Talbot. No interest was reserved, as was the case in Boswell vs. Clarkson, decided by this court. If then, a lending and borrowing should be inferred, (and that must be established before there can be usury, or a device to avoid, the statute, is, in reality, but a lending and borrowing,) it must be done in this case, solely upon tbe ground that notes on the Hinkston Exporting Company were, according to the proof, at a discount in market, of 33 1-3 per cent, at the time Talbot gave his note for them. We cannot, from this solitary fact, conclude that there was usury in an agreement to pay the nominal amount in specie for them, at (he end of twelve months. If there be Usury, how much' was there? Was the whole 33 1-3 per cent, less by the interest on 66 2-3 per cent, the real value of the paper, usurious? Suppose, within three months after the notes had been delivered by Warfield to Talbot, they had risen to par, Talbot, in that event, would gain by his contract. If the bank had failed from a sudden run upon it, the credit of its paper might, by the failure, be reduced one half or more, in market, but by collections from its debtors, or by the fact being ascertained, that its debt.s were well secured, its paper in circulation might speedily appreciate.
If depreciated bank paper be not money, but be a commodity, liable to be bought and sold like any other article, and that it is such a commodity, has been repeatedly decided by this court, then its fluctuations in value, from whatever cause proceeding, are risks and considerations for the contracting parties, and *85 neither can complain of any change which may after-wards take place. We do not know from the proof in this cause, that the notes on the Hinkstoñ Exporting Company did not, within a few months after the contract between-Warfield and Talbot, rise to par value. It may, indeed, be considered as a part of the history of the country, that the Independent Banks generally, failed; that their paper became greatly depreciated, and much of it continues worthless to this day; but this general fact cannot authorize us to fix the value of the depreciated notes of these various corporations, at different times, without proof; nor will it enable us to say that the paper of this bank is wholly worthless; or that, the value is fifty cents in the dollar; and of another, it is worth its nominal amount. A few of them did, we believe, close their concerns and pay all their notes in circulation. We cannot, therefore, know, unless by conjecture and suspicion, whether the contract in this case,was beneficial or injurious to Talbot. It has not the usual badge of a loan, to-wit: the reservation of interest about it. We, therefore, consider it (no.facts being developed which show that it was a device to evade the laws against usury,) as a fair sale, and Talbot-must perform his engagement.
Considered as part of history of country, that independent banks generally failed, and that their paper greatly-depreciated. But court cannot fix value of their notes, at different times, witfiout proof.
If this be not a sale, it would be difficult to effect one of depreciated bank notes; and all bargains in relation to them, will be reduced to’ the character of loans. The law does not require this, contrary to the intention of the contracting parties, and it would be arbitrary and oppressive in many cases, to construe into loans what were intended for sales. It will not follow, from these principles, as the counsel for Talbot seems to dread, that usurers may sell bank notes for a great deal more than is mentioned on their face, by selling on a credit. Bank notes may be, in some instances, above par, that is, worth more than their nominal amount of legal coin, because of the facility with which they may be transported. A.sale of a bank note for any thing above this difference, would, for obvious reasons, between the seller and purchaser, be considered a trick to evade the statute of usury, and would not be tolerated,
*86 The next question to be considered is, has Hugh Talbot shown himself entitled to a decree against George Talbot or Williams, for a set-off ? ft is objected, that the cause made out is not such an one as authorizes the chancellor to decree the set-offj' or to give him jurisdiction. The law, as laid down in the opinion delivered by the late judge Mills, in the case of Tribble vs. Taul, VII. Monroe, upon the subject of set-offs in chancery, meets our approbation. The principles stated in this opinion, seem to us, well fortified by authority, and however reasonable it may appear, basing our conclusions exclusively upon natural justice, to set-off one demand against another, and thereby balance accounts, yet there are many cases where it cannot be done by the chancellor, and we apprehend this is one of them. The note to War-field was not due, according to the bill, until the 6th of September, 1822. It was not until some time thereafter, as stated in the bill, but how long does not appear, that Warfield obtained his judgment; nor does it appear when Warfield transferred the benefit of his judgment, or the replevin bond, to George Talbot. About two thirds of the account relied on by Hugh Talbot, as a set-off, was for merchandise, &c. taken up by George Talbot, before he could have purchased the judgment or replevin bond, and to this extent, there is no pretext for saying that the account was a payment made upon the replevin bond.
But there is no proof that any flf the advances to or goods taken up by George Talbot, were, by agreement, to be credited in discharge of the replevin bond,.and it is expressly denied. Besides, all of the account-except $10, is for Commonwealth’s Bank notes; the replevin bond was for legal coin, and there is no proof showing the terms upon which the Commonwealth’s paper was, to be s.et-off against the bond ■ for specie. We cannot find; therefore, any evidence upon which to entertain the belief, that the account and bond have been, in any way. connected by the ■ agreement of the parties..
There is no suggestion of George Talbot’s insolvency, nor is there any reason given,..why Hugh Tai? *87 bet's remedy at law was inadequate to enforce the payment of the account. There is an amendatory bill, filed in May, 1827, which states that George Talbot had removed out of the state, but when, is not stated, nor is it mentioned for any other purpose than to fortify the claim of tKe complainant, to an allowance, or credit for a judgment rendered before a justice, which George Talbot had appealed from, and which was then undetermined. It seems, from the record of the warrant, that George Talbot was in the state, at least as late as June, 1824. Evert admitting that he had removed between that time ánd 1827, we are of opinion that such removal could not" effect the pre-existing rights of Williams. The bill was filed in May, 1825; Williams’s tight was then acknowledged, and all that Talbot then asked, Was, that he might be compelled to accept notes on the Bank of the Commonwealth. It was not intimated that George Talbot was then a non-resident. George Talbot was only entitled in equity, to the replevin bond; this equity he transferred to Williams. , Hugh Talbot cannot, after the right has thus vested, in Williams, set up the subsequent removal of George Talbot as a ground of equity, to bring in demands which he had against said George, without showing a connection between them and the replevin bond, while said George owned it in equity. If he were permitted to do so, it would be overreaching the right of Williams, by an act transpiring subsequent to the complete vestiture of his right. It would be absurd to say that if G. Talbot had remained, Williams would succeed, but as he removed, Williams mustióse.
The removal of assignor from the state up°by obligor, as a ground of equity vs. as-offdemands*' vs. assignor, which °°uld have b^ensei off.
There is not the least foundation for allowing the judgment before the justice, as a credit; it having been appealed from, and the appeal not decided. We are, therefore, of opinion, that a case has not been made out, which would have authorized the chancellor to take jurisdiction, with a view to decree a set-oif.
There is no ground for reversing the decree in favor of the appellant; but the decree of the circuit court in favor of the plaintiffs in error, is reversed and set aside, and the cause remanded, with direc* *88 iions to dissolve the injunction with damages, and tó dismiss the complainant’s bill with costs, without prejudice to his proceeding at law, against George Talbot.
Petition for re-hearing, a
The appellees in the appearand plaintiffs in error in the writ of error, must recover their costs in this court.
Depew and Bledsoe, for Talbot; Mills and Brown, for Warfield, &c.

The counsel for Talbot' presented the following petition for a re-hearing.

It is respectfully submitted to the court, by tbc counsel for Talbot, that there are grounds for a revision of the opinion delivered in these cases, and the following are urged:
1st. It is conceived, that in the absence of proof of ‘.usury, from the admitted facts in this transaction, the law *hecessarily implies usury. Depreciated bank bills, worth only two thirds of their nominal amount, are pretended to have been sold, for their full nominal amount, at twelve months, in gold or silver. It is not ¿eni.ed that bank paper may be sold for what it will bring, though depreciated, without infecting the transaction with usury. But how should such trans* action appear? Surely by express proof of such sale, or by circumstances from whence it must necessarily be inferred. Now it is too welt established, both from usage and authority, to recite proof, th^t while bank notes, in legal proceedings for the purposes of rendering judgment, calculating interest, &c; are con* sidered as a commodity; yet they are, to common intents, and in ordinary transactions in the country, regarded as money. The cases referred to in the brief, herein filed by the counsel for Talbot, are deemed sufficient to establish this. Now if a sale of these notes is not to be presumed, but must be proved, surely Warfield’s answer cannot be relied on as such proof. But no interest is reserved, and, therefore, a sale is inferred. It is respectfully submitted, that in 89 out of 100 usurious cases, no interest is reserved. How is this usury then effected? By bringing a note ready drawn,,into market, or most generally, private *89 ly to the broker, who gives, say two-thirds of its noun-Inal amount, the note being payable at 60, 90 or more day’s credit. And yet it is conceived by counsel, however much like the present case, this would not evade the statute of usury. If we suppose the broker, in "the case put, to have paid the full nominal amount of the note, brought to him for discount, in depreciated bank paper, pf the‘real value of only two thirds of the note brought to him, what is the difference? Vid. Bank of the United States vs. Wm. Owens, in manuscript, in the federal court here, and which had been adjourned to the supreme court; Owens got $5000 of commonwealth’s paper, of the Bank of the United States, for which he gave his note for $5000 in twelve months. Comnionwealth’s paper two for one, adjudged usurious by the supreme court, though no interest was reserved. 'R16 COUrtj
2d. It is respectfully submitted, that the> ment of the replevin bond or judgment, cari; an equity, and that Hugh Talbot’-s equity, against George, for the balance of account attached to th^ *5**^ demand, while George was its owner; the goods and _.*r money advanced by the former to the latterl whil|-o-gJ owning the demand, might reasonably be consider^'*- :and is strongly countenanced by the testimony Hiram Bledsoe, as extinguishing so much of the replevy bond. rgred dnly
For which several considerations and others, a rehearing is respectfully solicited.
But the court, on consideration, overruled the petition for a re-hearing. ’